FILED

2023 Jun-30  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **SHELIA WATKINS, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:23-cv-00192-ACA** |
| | ] | |
| **DANIEL McKINNEY, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Shelia Watkins and her minor son, J.M.S.,[1] filed this lawsuit against

Defendants Community Health Systems, Inc.; CSHPSC LLC; Grandview Medical

Center; Daniel McKinney; Jeri Wink; Jane Northcutt; Cynthia L. Jones; Dr. Nazia

Kabani; Jessica Hogue; Kendall Morgan Stricklin; Ashlee B. Quick; Kala M.

Skinner; Natalie Reddington; Arpan Patel; Kimberly Connell; Jacqueline Singleton;

JohnMichael Adam Grinfield; and Latasha Shunta Thomas Grady. (Doc. 1 at 1–2).

All of the individual defendants except Ms. Grady are employed in various

capacities at Grandview. (*Id.* at 3–4). Ms. Grady is a social worker for the "Jefferson

---

[1] The complaint states that Wellington Smith brings this suit on J.M.S.'s behalf as his next friend. (Doc. 11 at 1). An unrepresented minor "may sue by a next friend." Fed. R. Civ. P. 17(c)(2). But each party must sign each pleading. Fed. R. Civ. P. 11(a). Mr. Smith has not signed the complaint. (*See* doc. 11 at 57). As such, J.M.S. has not properly brought any of the claims asserted in the amended complaint. Even if Mr. Smith had signed the pleading, the same analysis set out below would apply to J.M.S.'s claims.

County Department of Human Resources." (*Id.* at 10 ¶ 22). Ms. Watkins asserts twenty-five claims against all of the defendants relating to her experience giving birth to J.M.S. at Grandview. (*See generally* doc. 1 at 6–56).

Because Ms. Watkins is proceeding *in forma pauperis* (doc. 4), the court must review her complaint for whether it states a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Under that standard, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court must dismiss the case if the plaintiff fails to plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and alteration omitted).

As an initial matter, the court notes that the precise facts alleged in the second amended complaint can be difficult to follow. The court has considered whether it

rises to the level of a shotgun pleading, *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015), but concludes that, although it may technically be considered a shotgun pleading, given Ms. Watkins' status as a *pro se* litigant, it is not egregious enough to warrant dismissal on that ground.

## I.   BACKGROUND

Ms. Watkins gave birth to her first son at a hospital in Florida in September 2021. (Doc. 11 at 6 ¶¶ 2–3). He had a "nuchal cord," which is when the umbilical cord wraps around the neck of a fetus, but she successfully delivered him vaginally with an epidural. (*Id.* at 6 ¶ 3, 21 ¶ 62); *see* Nuchal Cord, Stedmans Med. Dictionary (2014 ed.).

While Ms. Watkins was pregnant with her second son, J.M.S., she had an ultrasound that showed no nuchal cord. (Doc. 11 at 14 ¶ 33). A month and a half later, Ms. Watkins, accompanied by her partner, Wellington Smith, went to Grandview to give birth to her second son, J.M.S. (*Id.* at 7 ¶¶ 10–12). Ms. Watkins was already in labor (*id.* at 14 ¶ 34), and planned to have a vaginal birth (*id.* at 7 ¶ 10). But the epidural did not work. (Doc. 11 at 7 ¶ 12). Staff informed Ms. Watkins and Mr. Smith that the fetus had a nuchal cord. (*Id.* at 21 ¶ 63). Ms. Watkins and Mr. Smith repeatedly asked for an ultrasound to prove the presence of a nuchal cord, but the staff never did one. (*Id.* at 15–16 ¶ 39, 21 ¶ 63). As a result, Ms. Watkins does not believe J.M.S. had a nuchal cord. (*Id.* at 21 ¶ 63).

Because of the failed epidural, Ms. Watkins remained in pain for several hours. (Doc. 11 at 19 ¶ 53). Eventually medical staff gave Ms. Watkins an unnecessary Caesarian-section ("C-section"). (*See id.* at 13 ¶ 30, 16 ¶ 45). One of the defendants told Ms. Watkins after the procedure that when the procedure started, Ms. Watkins flinched, causing a doctor to yell out that "She can still feel!" (*Id.* at 13 ¶ 30).

After Ms. Watkins delivered J.M.S., staff took him to the nursery without the family's permission and kept him there, away from Ms. Watkins and Mr. Smith, for one or two hours. (*Id.* at 17–18 ¶¶ 47–48). During this time, someone at Grandview gave Ms. Watkins and J.M.S. drug tests without her consent. (Doc. 11 at 15 ¶ 35, 17 ¶ 47, 18 ¶ 49, 54 ¶ 131). Someone at the hospital also gave J.M.S. a COVID-19 vaccine, a Hepatitis B vaccine, or both, without Ms. Watkins' or Mr. Smith's permission. (*Id.* at 18 ¶ 52, 48–49 ¶ 119–22).

The day after J.M.S. was born, Ms. Watkins was staying in a maternity suite. (*Id.* at 11 ¶ 22). Ms. Grady, a social worker with the Jefferson County Department of Human Resources, entered the suit and took a picture of J.M.S. without Ms. Watkins' consent. (*Id.* at 11 ¶ 22, 23 ¶ 69). Although J.M.S. was medically cleared to leave the hospital at 1:30 p.m. on December 21, a Grandview social worker would not let J.M.S. leave for another four hours, meaning that Ms. Watkins and Mr. Smith also had to stay. (Doc. 11 at 35–36 ¶ 98, 38–39 ¶ 103).

After she left Grandview, Ms. Watkins requested her medical records. (*Id.* at 8 ¶ 16). The records are hundreds of pages long and contain multiple falsehoods, including stating that Ms. Watkins was admitted for induction of labor, stating that J.M.S. had a nuchal cord, giving a false time for J.M.S.'s birth, stating that Ms. Watkins gave birth to her first son at home, stating that Ms. Watkins was homeless, and expressing concern that Ms. Watkins and Mr. Smith might be involved in sex trafficking. (*Id.* at 7–8 ¶ 13–14, 11–12 ¶¶ 24–25, 12 ¶ 27, 14 ¶ 34, 15 ¶ 36, 19–20 ¶ 56, 21 ¶ 63). In March 2023, Ms. Watkins received notification that J.M.S.'s medical data had been disclosed in a data breach. (*Id.* at 22 ¶ 68).

## II.   DISCUSSION

Based on these facts, Ms. Watkins asserts twenty-five claims against all of the defendants. (Doc. 11 at 22–56). The court will begin with Ms. Watkins' federal claims before turning to her state law claims. Ms. Watkins' federal claims are:

    (1) violation of the Health Insurance Portability and Accountability Act ("HIPAA") "Security Rule" ("Count One")

    (2) violation of the HIPAA "Privacy Rule" ("Count Two")

    (3) invasion of privacy, in violation of 49 C.F.R. § 801.56 ("Count Six")

    (4) violations of the First, Third, Fourth, Fifth, and Ninth Amendments ("Count Sixteen")

    (5) conspiracy, under 18 U.S.C. § 241 ("Count Twenty-Two")

    (6) fraud, under 18 U.S.C. § 1001 ("Count Twenty-Three")

(7) illegal search and seizure, in violation of the Fourth Amendment ("Count Twenty-Four"); and

(8) deprivation of rights under color of law, in violation of 18 U.S.C. § 242 ("Count Twenty-Five").

(*Id.* at 22–24, 26–27, 42–43, 48–56).

Ms. Watkins has not stated a federal claim. Counts One and Two attempt to assert private causes of action for violations of HIPAA. (*Id.* at 22–24). But HIPAA does not create a private cause of action for violations. *Laster v. CareConnect Health Inc.*, 852 F. App'x 476, 478 (11th Cir. 2021) ("[E]very circuit to have considered the issue has also held that no private right of action exists under HIPAA.").[2] Accordingly, Counts One and Two do not state claims and the court must dismiss them.

Count Six attempts to assert a federal claim of invasion of privacy, under a National Transportation Safety Board regulation exempting certain "personal, medical, or similar file[s]" from disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. 49 C.F.R. § 801.506; (doc. 11 at 26–27). Even assuming this regulation or FOIA itself created a cause of action for invasion of privacy, the claim would fail because none of the defendants named are agencies subject to FOIA. *See* 5 U.S.C. § 552(a) (applying to agencies); *id.* § 551(1) (defining "agency"

---

[2] Although *Laster* is an unpublished opinion, the court finds it persuasive. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022). The same is true for the other unpublished or out-of-circuit cases cited in this opinion.

to mean "each authority of the Government of the United States," with some exceptions).

Counts Sixteen and Twenty-Four assert violations of the First, Third, Fourth, Fifth, and Ninth Amendments. (Doc. 11 at 42–43, 53–55). These claims must be brought under 42 U.S.C. § 1983, which permits a plaintiff to seek redress for deprivations "of a federal right by a person acting under color of state law." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (holding that a plaintiff does not need to cite § 1983 in her complaint to state a claim). But only one of the named defendants is a state actor; the rest are private entities or individuals. (*See* doc. 11 at 2–4 ¶¶ 1–13). The private entities and individuals named here as defendants cannot be viewed as state actors against which a civil rights action can be brought under § 1983. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (describing the rare circumstances under which a private individual can be considered a state actor).

As for the only state actor named in the complaint, Ms. Watkins' allegation against Ms. Grady appears to be that Ms. Grady entered Ms. Watkins' maternity suite at some point and took a picture of J.M.S. (Doc. 11 at 11 ¶ 22, 23 ¶ 69). This allegation is insufficient to state a claim for violation of any of the constitutional amendments on which Ms. Watkins relies. *See* U.S. Const. amend. I (protecting freedom of religion, free exercise of religion, freedom of speech, freedom of the

press, freedom of assembly, and the right to petition the government for redress of grievances); *id.* amend. III (prohibiting the government from quartering troops in private homes); *id.* amend. IV (protecting against unreasonable searches and seizures); *id.* amend. V (requiring due process and protecting against double jeopardy and compelled self-incrimination); *id.* amend. IX (providing that enumeration of rights in the Constitution is not exhaustive). Accordingly, Counts Sixteen and Twenty-Four fail to state a claim and the court must dismiss them.

Ms. Watkins' final three federal claims assert violations of federal criminal statutes: Count Twenty-Two asserts a violation of 18 U.S.C. § 241, Count Twenty-Three asserts a violation of 18 U.S.C. § 1001, and Count Twenty-Five asserts a violation of 18 U.S.C. § 242. (Doc. 11 at 48–56). A federal statute does not create a private cause of action unless there is "clear evidence of Congress's intent to create a cause of action." *McDonald v. S. Farm Bureau & Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002). There is no such evidence for the criminal statutes on which Ms. Watkins relies. *See Collins v. Bates,* No. 17-14559-G, 2018 WL 5090845, at *7 (11th Cir. May 10, 2018) (§§ 241 and 242 do not create a private cause of action); *Lichtenberg v. Sec'y of the Navy*, 627 F. App'x 916, 917 (11th Cir. 2015) (§ 1001 does not create a private cause of action). Accordingly, Counts Twenty-Two, Count Twenty-Three, and Count Twenty-Five do not state claims and the court must dismiss them.

Ms. Watkins' remaining claims arise under state law. (*See* doc. 11 at 24–42, 44–48). The court had jurisdiction over the state law claims based on its supplemental jurisdiction, under 28 U.S.C. § 1367(a). But, as the court has explained, the court must dismiss all of Ms. Watkins' federal claims for failure to state a claim. And where the court "has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over any remaining state law claims. 28 U.S.C. § 1367(c). The Eleventh Circuit encourages district courts to do so if all federal claims are dismissed before trial. *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1089 (11th Cir. 2004). This court therefore will decline to exercise supplemental jurisdiction over Ms. Watkins' state law claims.

## III.    CONCLUSION

The court **WILL DISMISS** Ms. Watkins' federal claims (Counts One, Two, Six, Sixteen, Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five) **WITH PREJUDICE**. The court **WILL DECLINE** to exercise supplemental jurisdiction over the remaining claims, which all arise under state law, and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this June 30, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE